The second case on our docket this morning is 23-10956 in the matter of Durand-Day. Mr. Cartwright. May it please the court. Good morning. I am Ethan Cartwright. I represent the appellant, Pam Basil, the standing Chapter 13 trustee. In this case, I realize it may seem reasonable that a debtor may be able to pay an unsecured creditor directly in a Chapter 13 bankruptcy case like she might, a mortgage or a note for a car. But while the permissive Section 1322 of the Bankruptcy Code provides numerous possibilities for potential treatment of various types of claims in Chapter 13 bankruptcy, Section 1325B of the Bankruptcy Code provides an additional mandatory requirement that applies to all allowed unsecured claims. And that provision strips the bankruptcy court of all authority to approve a plan unless the 100% payment test or disposable income test is met for payment of unsecured claims. So with that in mind, I'd kind of like to cover about three areas this morning, hopefully. The statutory context of these provisions, kind of some of the other authority that's interpreted these provisions in similar phrases in the Code, and then the mandatory nature of Section 1325. So 1325B. So the issue here is whether the 100% payment test is met. And that is required to be met with property that is distributed under the Chapter 13 plan. So what is property distributed under a Chapter 13 plan? Well, for a payment to be property that's distributed under the plan, it must be a payment that the plan requires to be paid. And a Chapter 13 bankruptcy plan can only do that over a period of five years. There's a limit under 1322D1. So that's while the plan still exists and controls. All those payments are required to be made during the plan. The way the phrase under the plan is consistently used by Congress throughout Chapter 13 of the Code makes that very clear, that for a payment to be under the plan, it must be made during the plan. But the debtors' plans seek to delay repayment of non-dischargeable student loan claims until after their plans are long over. They reason that because these claims are non-dischargeable, they will eventually have to be paid by the debtors after the bankruptcies end, even though there are, of course, innumerable circumstances which may intervene that could prevent payment of the student loans after the bankruptcy plans are over. But a payment that may be made on a non-dischargeable debt after a bankruptcy plan ends is not property that's distributed under the plan. So trying to take a look at this in the statutory context and keeping in mind that the phrase under the plan bears the same meaning throughout the text of Chapter 13 and that the provisions of Chapter 13 are compatible and not contradictory, I want to turn my first attention to Section 1322B5. I think most of the case centers around 1322B5. It is the code provision that the debtors are relying upon to justify the treatment for the student loan claims, and it's also the code provision which the district court and the bankruptcy court also relied on. So this is commonly referred to as the cure-and-maintain provision. But if you read 1322B5 carefully, it's actually the undoing of the debtors' arguments. So Section 1322B5 permits a Chapter 13 Plan to, one, provide for the curing of any default within a reasonable time and provide for maintenance of payments while the case is pending on any unsecured or secured claim and then on which the last payment is due after the date on which the final payment under the plan is due. Now, the debtors argue that they are using this section and paying 100% to the student loan creditors with payments under the plan. They argue that a payment after the bankruptcy ends is a payment under the plan and that that same payment is also due after the final payment under the plan. But how can a payment be both a payment under the plan and also be made after the date on which the final payment under the plan is made? It can't. The debtors can't have it both ways. The provision doesn't allow the debtors to provide for payments long after their plan ends. It merely entitles debtors to provide for maintenance payments, but crucially only while the case is pending. It is only the maintenance payments that are made during the plan that are under the plan, not those that come afterwards. This provision does not even allow debtors to provide for payments that would be made after a Chapter 13 plan ends. It only confers the ability to provide for payments while the case is pending. It's because only the payments that are made while the case is pending are under the plan that cure-and-maintain plans, which are most commonly used for mortgages in Chapter 13, do not violate the five-year time limit of Section 1322d1. But if the debtors are right and payments under the plan include payments after the bankruptcy is in, then every cure-and-maintain plan for a mortgage would then violate Section 1322d1 by providing for payments over a period that is longer than five years. That's a result that doesn't make any sense and is contrary to decades of bankruptcy practice and procedure. I also want to note that one thing that kind of gets missed is because we're all smart people and we understand that as a result of what's going on here, the debtors are going to owe this money after the bankruptcy ends, but the plans aren't really the reason that's happening. That's happening under operation of law. The debtors' argument is really complicated by the fact that what they filed are 60-month plans. All the plans do is describe what's going to happen in that 60-month window. They don't touch on what's going to happen before or after. The debtors talk about these payments that will come afterwards as if they are payments that are listed under a heading in the plan, but they're not. All we know is that when these bankruptcies end, the debtors will still be liable on a debt because as things stand, the loans won't be paid in full with payments under the plan during the pendency of the case. Probably one of the reasons this case is a lot more important than it appears on its face is because it centers around the phrase under the plan and y'all's interpretation of it, and that phrase is used throughout Chapter 13. It brings the discharge into question, which is the most important facet of bankruptcy, getting a Chapter 13 discharge. The next place I want to focus is Section 1328A. A decision for these debtors that payments under the plan include payments on long-term debts after the plan has ended may be great for these individual debtors, but if you hold for the debtors in this case, you may end up taking away a discharge for all the other debtors who complete their five-year plans. The Section 1328A— Taking away other debtors? You could, yes. So Section 1328A directs a bankruptcy court to grant a debtor a discharge only after completion of all payments under the plan. Therefore, if payments on long-term debt, like a mortgage payment that's due long after the case is over or student loan debt that's due long after the case is over, is a payment under the plan, courts would not be entitled to grant debtors a discharge until they pay off those claims and complete all their payments under the plan. So you wouldn't retroactively be taking away discharge, but future debtors would not be— you would change the practice going forward, and future debtors may not be able to get their discharge after five years of payments. But if you hold the payments under the plan, only include those payments that are made during the plan, the discharge provision will continue to function just as it has for decades. Another important rule to focus on is 3002.1. 3002.1 was added to help debtors kind of deal with their mortgages. It's a very important rule. It's designed to make sure that there is a determination that debtors actually cured their mortgage on their principal residence during their bankruptcy case. It also uses the phrase under the plan, and, again, the way the phrase is used clearly expresses that there is this temporal component, that only those payments that a plan requires to be made during the plan are payments under the plan. So in current practice, once a debtor completes making payments to the bankruptcy trustee at the end of the case, the trustee files a notice of final cure under subsection F of 3002.1. But if payments under the plan would also include payments on mortgages long after the plans are over, as the debtors argue, when would the trustee file the notice of final cure? And if the notice of final cure is going to be filed after the debtor finishes paying off their mortgage, which could be 10, 20 years into the future, what's the point of filing a notice of final cure? At that point, the mortgage is paid off. There's no reason to say that the mortgage has been cured. It's been paid. The rule loses all its point. You're not saying, hey, this mortgage is now current and back to regular repayment status. You would be saying that this is paid off and it would be 20 years after the bankruptcy. It would completely upend this procedure and change practice that's been established for decades. There are some other provisions that I want to touch on, such as 1322C. I think the mortgage industry could be a little bit unnerved by holding that payments under the plan includes payments long after the plan ends, because rather than filing cure-and-maintain plans, debtors may opt to file plans that modify their mortgages. What exactly is the relief you want from this court? I'm not clear about that. Okay. Yes, ma'am. I would like the court to—I'm asking the court to remand this case and overrule the district court's opinion and hold that for the 100 percent payment test to be met, it must be met with payments in full under the plan, which may not exceed a time period of more than 60 months. What does that do to the student loan debt? Well, the student loan debts are allowed unsecured claims, which are required to be paid with all the other allowed unsecured claims under the 100 percent payment test. So you're requiring that the student loans be repaid within the five-year period? Yes, ma'am. Okay. I just want to be—that's what you want. Yes, ma'am. To satisfy the 100 percent payment test, all unsecured—allowed unsecured claims, which include student loan claims, must be paid in full in the five-year term of the plan. And that helps other unsecured creditors how? Well, in this case, the debtor—in these cases, the debtors have sufficient disposable income to pay all of their general unsecured debt, not just some of their unsecured debt. So the disposable income of both debtors, when multiplied by the applicable commitment period, equals an unsecured creditor pool, which vastly exceeds the total of their general unsecured debt and their student loan debt combined. That's true for these debtors. What about others? Well, they would simply still have to satisfy the statutory test. So basically, you look at Section 1325B and you say, okay, did the trustee or a holder of an unsecured claim object? If so, they must meet the disposable income test or the 100 percent payment test. So in cases where that's not the case, rather than defaulting to the 100 percent payment test, those debtors would just have to satisfy the disposable income test. I'm running short on time. I want to address Kessler briefly in the case law section here. Kessler is a Fifth Circuit opinion where the Court considered similar issues when debtors had failed to make mortgage payments that were required to be made during their Chapter 13 plans. There, I think this Court acknowledged that payments under the plan were only the payments that were required to be made during the plan because the Court there was only concerned with payments that fell under the plan during that time period. Now, if this Court were to have adopted the debtors' reasoning prior to hearing Kessler, it would not have been concerned only with the 60 mortgage payments that were required to be made during the bankruptcy plan. In those circumstances, I think the Court would have said, well, this isn't right yet. We can't determine the issue because the debtor hasn't made all their payments under the plan because their mortgage isn't paid off yet. So I think when you look at the district court opinion, the district court misinterpreted Kessler and got the facts wrong. The only payments that were focused on by the courts in Kessler were the payments that were required during the plan. If you read the facts of the bankruptcy court opinion, they even state that it was the payments that were required during the plan. I think that makes it very clear. The payments that would be required after the plan weren't even due at the time that case was heard. Better quickly move on to the mandatory here as we get low. So I think kind of the main thing here is the debtor is trying to say 1322b-5 justifies their treatment. However, Section 1325b-1 states that if a trustee objects, the court does not have any authority to approve a plan unless the disposable income test or the 100% payment test is met with payments under the plan. That's a mandatory provision. The court may not approve the plan. There is no exception. And whenever you have a mandatory provision squaring off with a permissive provision, the mandatory provision must prevail. Congress enacted BAP-CEPA to ensure that debtors that can pay do pay. The way that Congress worded Section 1325 helps accomplish that purpose. Congress wasn't looking to provide debtors with an extended repayment option when they can afford to pay everything off during their plan. They wanted debtors to pay according to their ability during their plan. Here, there really is no other option than 100% payment with property distributed under the plan. And property distributed under the plan can only include payments that the plan requires to be made during its term, which can only be a maximum of 60 months. Thank you. Do you have any questions? Thank you. Good morning. Eric Meskell for the debtors. Student loans are a unique beast in the Chapter 13 world. Basically, Congress has set out that they're non-dischargeable unless a hardship can be demonstrated. On top of that, the Supreme Court has added the Brunner test, which almost makes that bar almost impossible to get done. There are plenty of adversaries that are filed against the Department of Education, and a lot of their responses are, it's not a hardship. You can do an income-driven repayment plan of $0, and that defeats the Brunner test. In bankruptcy, 1322b-5 allows you to cure and maintain unsecured debt with an expiration date past the 60 months. There's no doubt about that. Student loans are 30 years, 20 years. They far exceed the 60-month plan period. 1328 contemplates, A-1 contemplates that if you list the debt under 1325b-1, it's non-dischargeable. Student loans are non-dischargeable, so it's already in the plan. And as Judge Pittman pointed out in the district court, Rake v. Wade in the Supreme Court points out that 1322b-5 is contemplated as provisions in the plan under 1328a. The trustee argues that there might be changes later on after the 60-month period. Well, that's fine. The plan is as of the effective date. If the lender is getting 100% of what they're paid and every other unsecured creditor that filed an allowed claim is getting 100% of what they paid, to me, the 100% payment test is met. Everybody's getting 100%. Whether the debtor has, you know, $2,000 disposable income every month and they pay $500 shouldn't be a factor. Everybody's getting 100%. That would be the disposable income test, and it's an either-or. 100% test says if everybody's getting 100%, there shouldn't be a problem. The plan should confirm. And so my particular plans, they're deferred. It's my understanding the Department of Education defers plan payments while you're in bankruptcy. Well, deferred payments are still plan payments. They're still payments. They're still getting that money. It's just after the case discharges because the debt's non-dischargeable. It's not going away. The trustee would also argue that payments have to be made to the lender during the bankruptcy. And on top of that, if you have a $300,000 student loan, you pay the whole thing through in 60 months, which is impossible for most debtors. So the trustee would take away the contractual rights of the debtor and the lenders. The lenders have a right to defer payments. And it might even be beneficial to the lender because student loans is non-dischargeable, continue to accrue interest during the plan. So they're actually making money if they allow the payments deferred. So it's negatively impacting the trustee's position by making and forcing them to be paid through the plan. And so I think under this case that the plan should be confirmed and that the lower court should be affirmed. Counsel, is there anything in the record that shows that these student loans were in default at the time of the plan? I believe those were agreed to at the lower court, Your Honor, but I don't think that there's anything specifically documentation that says they were in default. And does the plan provide for payments on those student loans? It does not. They're deferred while they're in bankruptcy. Were either of these student loans forgiven by recent executive actions? I don't know. I haven't followed up with that. I don't believe so. Or I don't believe that proof of claims have been withdrawn. I don't have that information. We just want to make sure we're not issuing orders in moot cases. They have not, Your Honor. Any other questions? Thank you for your time. So the problem with the debtor's argument is that it ignores the language of the statutes. The test requires that the 100% payment test requires that it be met with property that is distributed under the plan. Because this is a mandatory provision, there's really no escaping trying to determine what it is that is property under the plan. So when we look through things and we try to decide what is property under the plan and we go through the code and we find these provisions, I think it's very telling that, in my briefing, I've been able to point out some conflicts within the code that would create issues. And yet the debtors and neither of the lower courts have found any conflicts with the trustee's provision. And the reason is because that's the way the statutes were designed to work. I'd also like to push back a little bit on one of the arguments Mr. Maskell made. He said that, you know, if these debtors had $300,000 student loans, they just couldn't pay it. Well, they don't have $300,000 student loans. They have student loans that they can't afford to pay. If they had $300,000 student loans that they could not afford to pay in 60 months, they wouldn't be required to pay the 100%. They wouldn't be required to satisfy the 100% payment test. They would only be required to satisfy the disposable income test to get their plan confirmed. And they would only then be required to pay according to their ability. So I think that concern is a little overblown. Additionally, I think I wanted to try to come back and pick up on a case that I thought was pretty important, and that's the Kenney case from the Tenth Circuit. That's a really interesting case to me because it's probably the most on-point case I could find when considering this particular issue. And it actually looks at the meaning of the phrase, under the plan. And in that case, the court denied a debtor's discharge because she made two of her mortgage payments after her plan had ended. After she had a serious car accident and wasn't able to work, she was a very sympathetic debtor. But why did they deny the discharge? Because late payments are not under the plan if the plan has already expired. The Kenney court's reasoning is really right on point. They look, just as I have, to Section 1322's five-year time limit and stated that a debtor cannot commit to a plan that lasts more than five years. And they held that a debtor only completes payments under the plan when payments come during the plan's five-year time period. And really what they're doing is they're looking at, in that case, they were looking at Section 1322 and how it worked with Section 1329, the discharge provision. And that's kind of what you have to do a similar thing here. Look at Sections 1322, 1329, and as well as 1325B. And then also, I'd really like to point out the fact that I cited numerous bankruptcy cases where the courts were not necessarily considering what a payment under the plan was. But those cases did explicitly state that the 100% payment test had to be met within the five-year limit. So holding otherwise would go against the great weight of the authority of all the courts out there, especially when the debtors in the lower courts could not point to a single case that explicitly stated that the 100% payment test could be met over a period that extends beyond the five-year limit or that payments under the plan include payments long after the plan ends. Why hasn't this come up all the time? Why hasn't this come up before? You know, it kind of was the reverse trend several years ago. So several years ago, people would try to file plans to favor student loans and get them paid more. But these days, people are coming into bankruptcy, and they lost a lot of those. It was found to be unfair discrimination in favor of the student loan creditors. So kind of the new tactic has been to separate the student loan creditors from the remaining general unsecured creditors to avoid payment of them. And the motivation is clear. The debtors just want to keep their payments as low as possible while they're in bankruptcy. You know, most Chapter 13 debtors aren't filing explicitly for a discharge of general unsecured debt. I'd say most of our debtors are filing to prevent foreclosure, eviction, repossession, things like that are the primary motivating factors. But once they get in bankruptcy and they want to take advantage of all those benefits, rather than taking the fat with the lean, the debtors here are saying, hey, we want everything that bankruptcy gives us and all of its benefits, but I want to keep one foot over here in my contractual world before I file and not have those provisions of the code apply to me in my treatment of these claims. And that's where it falls apart. So as to why there is a trend now, I think that it's just the fact that there are people with student loans who are filing bankruptcy. We've gone through a pandemic where people lost jobs, and they want their payments to be as low as they possibly can be throughout their case. The difference between most of those people and these debtors are that the bankruptcy court found that these debtors have sufficient disposable income to afford to pay off all of their debt during their plan. Counsel, if Kenny is the best, most on-point case that you can find and it doesn't involve student loan debt, am I fair in assuming that we— No, Kenny focuses on, as far as talking about under the plan, the phrase under the plan is the most on point with regards to that. Most of the cases that you'll find that are most analogous to this are going to be cases that look at Section 1322B.5, Cure and Maintain, and talk about the characterization of the maintenance payments during the plan. And that's kind of what was going on in Kenny. The other lines of cases that you'll find that kind of go along with this are the 1325B cases where this court had one, I think it was Brown, where the courts are all saying, well, it's an either-or thing. You either pay 100% or you satisfy the disposable income test. And in most of—I think that's basically the rule, the either-or test has been adopted nationwide. And in most of those cases is where you'll find the statements that the option is to satisfy the 100% payment test, or if you can pay it all off in 60 months, then you can pay it all off in 60 months without regard to whatever your monthly disposable income requirement would be. Any other questions? Well, thank you all for your time this morning. Thank you, counsel.